IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN R. GRAY,<br><br>        Plaintiff,<br><br>  v.<br><br>CITY OF HAYWARD POLICE<br>DEPARTMENT, et al.,<br><br>        Defendants.<br>_____ | No. C 05-0855 MMC (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR SUMMARY ADJUDICATION; DIRECTING PLAINTIFF TO FILE NOTICE RE: INTENT TO PROSECUTE**<br><br>**(Docket No. 23)** |

      On February 28, 2005, plaintiff, a California prisoner proceeding pro se, filed the above-titled civil rights action pursuant to 42 U.S.C. § 1983, alleging defendants Officer B. Matthews ("Matthews"), Officer J. Cristofani ("Cristofani"), Officer D. Olsen ("Olsen"), Officer D. Dorn ("Dorn"), and Officer E. Hutchinson ("Hutchinson") of the City of Hayward Police Department ("HPD") used excessive force against plaintiff in the course of his arrest. Plaintiff also named the HPD itself as a defendant. After reviewing the complaint, the Court found the allegations stated a cognizable claim for the violation of plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and ordered the complaint served upon all of the defendants. Now before the Court is defendants' motion for summary judgment or, alternatively, summary adjudication of issues. Although given an explanation of a motion for summary judgment, a warning as to the possible consequences of such a motion, and the opportunity to file an opposition, plaintiff has not filed a response.

# BACKGROUND[1]

In April 2004, plaintiff was wanted for arrest on numerous charges, including kidnaping, rape and assault. Due to the nature of these charges, as well as plaintiff's criminal history, which included arrests for resisting arrest and assault and battery upon police officers, plaintiff was considered by the HPD to be "armed and dangerous." On April 28, 2004, HPD officers, including the individual officers named as defendants herein, surrounded the building where plaintiff was staying, for purposes of arresting him. The parties disagree as to what happened thereafter.

### A. Plaintiff's Account

The following facts are alleged in plaintiff's verified complaint. Plaintiff was in his garage when his daughter approached him, crying and saying, "They're going to shoot you." He heard "a lot of yelling" outside, and when he stepped outside of his garage, he heard "get down, shoot him, theirs [sic] a color[ed] guy a nigger around the building." He then saw two men approach him with rifles, wearing cargo pants and black shirts. Because they did not tell him they were police officers, he ran up a flight of stairs onto a deck. When he saw a man pointing a rifle at him, he said to the "officer," "I surrender please don't kill me." Plaintiff put his hands up, jumped to the ground, and put his hands "in a surrendering position." He then was tackled by Cristofani and Dorn, and was immediately handcuffed. While plaintiff remained handcuffed, Cristofani and Dorn "beat him," after which beating Officer Carpenter ("Carpenter")[2] approached and kicked plaintiff in the back. The three officers then dragged plaintiff, who was still in handcuffs, to the stairs, at which point Hutchinson and Matthews approached. Hutchinson punched plaintiff in the face "busting [plaintiff's] lip," hit plaintiff in the back, face and arms with his baton, and pepper-sprayed him. Plaintiff screamed for help, "beg[ged] them not to kill [him]," and shouted "for them to stop beating [him]" and that "[he] could not breath[e]." Matthews told plaintiff to shut up and that he was going to shoot

---

[1]Except where noted, the facts described in this section are undisputed.

[2]Carpenter is not named as a defendant.

2

him. Matthews then hit plaintiff in the face and on the top of the head with the scope of his rifle, "busting [plaintiff's] head wide open," and pointed the barrel of the rifle at plaintiff's face. Hutchinson next told Officer Divinagracia ("Divinagracia")[3] to release a police dog to bite plaintiff, after which the dog bit him on the legs and wrist. While plaintiff was "bleeding profusely" from his head and face, defendant Olsen "slapped" plaintiff, told him to "shut up," and ordered another officer to put a cloak over plaintiff's head. Thereafter, plaintiff was taken to the hospital. At all times during the beating, plaintiff remained handcuffed.

**B. Defendants' Account**

Defendants attach to their motion declarations by Matthews and Dorn in which said officers set forth an account that differs from plaintiff's account in a number of respects.[4] Matthews states that after the officers arrived at plaintiff's house, plaintiff climbed out of a window onto a deck, ignored repeated commands by officers to "stop running" and to "get on the ground," ran onto an adjacent roof, and jumped to the ground. (Matthews Decl. ¶¶ 14-20.) According to Matthews and Dorn, plaintiff "lowered his right shoulder" and "ran directly at" Officer Dorn, who "tackled" plaintiff to the ground, and plaintiff struck Dorn in the head with his right elbow. (Matthews Decl. ¶¶ 20-23; Dorn Decl. ¶¶ 12-14.) Dorn states that plaintiff's left arm was concealed, that Dorn "remained on [plaintiff]'s back" and tried to "control his arms," and that "[o]ther officers began to assist [him]"[5] and "took over the attempt to control [plaintiff's] right arm" while Dorn pulled at plaintiff's left arm and shouted to plaintiff to give the arm to him. (Id. at ¶¶ 13-14.) Dorn further states that when plaintiff continued to hold his left arm tightly against his side, Dorn attempted to administer a "Carotid restraint," which attempt he then "aborted," and eventually he and the other officers controlled plaintiff's arms and handcuffed him. (Id. at ¶¶ 14-16.) Matthews states that while Dorn and plaintiff were on the ground, Matthews struck plaintiff once in the head with his

---

[3]Divinagracia is not named as a defendant.

[4]The other defendants have not submitted declarations nor have declarations been submitted by any of the other officers present at the scene.

[5]Dorn does not further identify these officers.

3

1 "department issued weapon," but plaintiff continued resisting and plaintiff's left hand
2 remained concealed. (Matthews Decl. ¶¶ 24-25). According to Matthews, "several other
3 officers converged on plaintiff,"[6] Matthews shouted at plaintiff to stop resisting, but plaintiff
4 continued to "actively resist," "violently thrashing" and "kicking"; eventually, plaintiff's
5 arms "were secured" and he was handcuffed. (Matthews Decl. ¶ 25.) Matthews and Dorn
6 also state that after plaintiff was handcuffed, he kicked, screamed and spit saliva and blood at
7 "several" officers,[7] who "had to hold him down," place him in a "wrap restraint," and put a
8 "spit shield" on his head. (Matthews Decl. ¶ 26; Dorn Decl. ¶ 17.) Matthews states he did
9 not strike plaintiff after he was handcuffed, and did not hear any officer shout "Shoot him."
10 (Matthews Decl. ¶ 28.) After plaintiff was restrained, he was taken by ambulance to a
11 hospital for treatment of injuries sustained during the incident. (Id. at ¶ 26.)

**DISCUSSION**

A.  Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding a fact is material if it might affect the

---

[6] Matthews does not further identify these officers.

[7] These officers are not further identified by Matthews or Dorn.

4

outcome of the suit under governing law, and that a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.   Analysis

1.   Evidence Considered

Defendants have submitted declarations by Dorn and Matthews, but not by the other three individual defendants or other witnesses to the arrest. In addition to these two declarations, defendants have attached to their motion a declaration by their attorney, Jeff Cambra ("Cambra"), who attaches thereto "copies of incident reports, arrest records, and medical records from the Hayward Police Department pertaining to the allegations contained in the complaint." A district court may only consider admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). Unauthenticated documents and hearsay evidence are not admissible, and, consequently, may not be considered on summary judgment. See id. at 773-74, 778. The documents attached to Cambra's motion are not admissible evidence in that

5

they have not been properly authenticated, and contain hearsay evidence for which defendants have not suggested any applicable exception to the hearsay rule. Because these documents are not admissible evidence, they will not be considered by the Court in connection with defendants' motion.

As noted, plaintiff has not filed an opposition to the motion for summary judgment. Where the plaintiff does not file an opposition to a motion for summary judgment, but, as here, has verified his complaint, the Court treats the allegations in the verified complaint as an opposing affidavit to the extent such allegations are based on the plaintiff's personal knowledge and set forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

2.   Individual Defendants

The constitutional right at issue where it is alleged that a law enforcement officer used excessive force in the course of an arrest or other seizure is the Fourth Amendment right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV; see Graham v. Connor, 490 U.S. 386, 394 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotation and citation omitted). Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions, and/or failure to act,[8] are objectively reasonable in light of the facts and

---

[8] Police officers may be held liable if they have an opportunity to intercede when their fellow officers violate the constitutional rights of a plaintiff but fail to do so. See Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

6

1 circumstances confronting him, without regard to his underlying intent or motivation and
2 without the "20/20 vision of hindsight." Id.

3       The Court's consideration of whether a particular use of force was reasonable "must
4 embody allowance for the fact that police officers are often forced to make split-second
5 judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the
6 amount of force that is necessary in a particular situation." Id. at 396-97.  Not every push or
7 shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the
8 Fourth Amendment. Id. at 396.

9       Here, the facts are in dispute as to whether plaintiff was resisting the officers when
10 they used force against him.  First, there is a dispute concerning whether plaintiff surrendered
11 and showed his hands to the officers.  As noted, plaintiff alleges that after he ran up to the
12 deck, he saw a man holding a rifle pointed at him, at which point plaintiff said "I surrender,"
13 put his hands up, jumped to the ground and "put [his] hands in a surrendering position."  By
14 contrast, Dorn and Matthews state in their declarations that plaintiff, after jumping to the
15 ground, rushed at Dorn, elbowed him in the face, and, after being tackled to the ground,
16 continued to resist and kick, concealed his left hand, and refused to allow the officers to
17 control his arms.  (Matthews Decl. ¶¶ 20-25; Dorn Decl. ¶¶ 12-14.)  Second, there is a
18 dispute as to the time at which plaintiff was handcuffed in relation to the officers' use of
19 force.  Plaintiff alleges he was handcuffed as soon as Dorn and Cristofani tackled him to the
20 ground, and before Matthews, Dorn and the other officers struck him.  Defendants contend
21 plaintiff was handcuffed after Matthews had struck him and the other officers had joined in
22 the melee, and that plaintiff was never struck after being handcuffed.  (Matthews Decl. ¶¶ 25-
23 28; Dorn Decl. ¶¶ 13-17.)

24       The next area of disputed fact concerns the amount of force that was applied by the
25 defendants and other officers.  Plaintiff alleges that after he was tackled to the ground and
26 handcuffed, Cristofani and Dorn "beat him," Carpenter kicked him in the back, these three
27 officers dragged him to the stairs in handcuffs, defendant Hutchinson punched him in the
28 face and hit him in the back, face and arms with a baton, Hutchinson pepper-sprayed him,

7

1 Matthews threatened to shoot him while pointing a gun at his face, Matthews struck him in
2 the face and on the top of the head with the scope of a rifle, "busting [his] head wide open,"
3 Hutchinson directed Divinagracia to release a police dog which bit plaintiff on the legs and
4 wrist, and Olsen "slapped" him.  Matthews states that after Dorn tackled plaintiff to the
5 ground, he struck plaintiff once in the head with his weapon, but denies having heard any
6 officer threaten to shoot plaintiff.  (Matthews Decl. ¶ 24).  According to Dorn, after tackling
7 plaintiff to the ground, he tried to pull at plaintiff's left arm, and attempted but did not
8 complete a "Carotid restraint."  (Dorn Decl. ¶¶ 14-15.)  The declarations submitted do not
9 address plaintiff's allegations of the use of force by the other defendants and officers present,
10 but in their motion defendants concede "other officers" used "baton strikes, open hand
11 strikes, and for a brief moment a K9" in the attempt to subdue plaintiff.[9]

12       Assuming plaintiff's version of these events is true, as the Court must do at this stage
13 of the proceedings, plaintiff has raised a triable issue of material fact, as he has alleged facts
14 from which a finding could be made that the officers' actions were unreasonable under the
15 circumstances.  Certainly, the officers, at the outset, had reason to be concerned for their
16 safety, as there is no dispute that plaintiff had a history of violence with the police, was
17 wanted for violent crimes, and initially had run from his house to the deck.  Plaintiff states,
18 however, that once he was on the deck, he told the officers he was surrendering and showed
19 them his hands, after which he was handcuffed.  Thereafter, according to plaintiff, defendants
20 and other officers participated in a beating in which they kicked him, dragged him, punched
21 him in the face, hit him with a baton in the back, face and arms, pepper-sprayed him, pointed
22 a gun at his face and threatened to shoot him, hit him in the face and the head with the scope
23 of a rifle, and released a police dog who bit him on the legs and wrist.  It is undisputed that at
24 least seven police officers and a police dog were present, and there is no evidence plaintiff

---

[9] Although the police reports attached to Cambra's motion are not admissible evidence, and thus are not relied upon herein, the Court notes they contain a report by Hutchinson stating he hit plaintiff eight times in the face with "palm-heel strikes," a report by Cristofani stating he hit plaintiff "three to four times" on the arm with his baton, and a report by Divinagracia that he released a police dog who bit and punctured plaintiff's calf.

8

1 was armed. Further, it is undisputed plaintiff was injured and bleeding as a result of the
2 altercation, and was immediately taken to a hospital by ambulance for treatment of his
3 injuries. See Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199 (9th
4 Cir. 2001) ("Headwaters") (holding that whether use of force poses risk of significant injury
5 is factor considered in evaluating need for amount of force used), judgment vacated on other
6 grounds, 534 U.S. 801 (2001).

Because, under plaintiff's version of the events, he was effectively under police control and no longer a danger, the considerable amount of force alleged by him would not have been reasonable. See e.g. Drummond v. City of Anaheim, 343 F.3d 1052, 1058-60 (9th Cir. 2003) (finding that once suspect handcuffed on ground without offering resistance, two officers who knelt on him and pressed their weight against his torso and neck despite his pleas for air used excessive force); Robinson v. Solano, 278 F.3d 1007, 1013-14 (9th Cir. 2002) (en banc) (finding excessive force where police pointed gun at head of suspect who was outnumbered by police, was approaching them peacefully, and no longer carried shotgun as previously reported). Accordingly, an issue of material fact exists as to whether defendants Hayward Police Officers Matthews, Cristofani, Olsen, Dorn and Hutchinson used excessive force against plaintiff in the course of his arrest. See Headwaters, 240 F.3d at 1198 (noting unreasonable force claims are generally questions of fact for jury because Fourth Amendment test for reasonableness is inherently fact-specific).

Defendants argue they are entitled to qualified immunity. Qualified immunity is only available where it would not have been clear to a reasonable defendant, under the facts viewed in the light most favorable to the plaintiff, that his conduct violated the plaintiff's constitutional rights. See Saucier v. Katz, 533 U.S. 194, 201-02 (2001) ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."). Here, the facts, viewed in the light most favorable to plaintiff, are that after plaintiff surrendered and was handcuffed, seven police officers, including the five defendants, struck him with multiple blows to the head, face and body with their fists, feet and weapons, and that while one defendant pointed a gun at

9

plaintiffs face and threatened to shoot him, another defendant ordered a police dog to attack him. Under the authority set forth above, no reasonable official could have believed that applying such force against plaintiff after he had surrendered and was handcuffed was lawful. Accordingly, on the current record, the individual defendants are not entitled to qualified immunity.

        3.        Municipal Defendant

In the complaint, plaintiff names the HPD as a defendant, as well as the individual HPD officers described above. A city or county governmental entity may not be held vicariously liable for the unconstitutional acts of its employees under a theory of respondeat superior. Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Rather, local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom results in a violation of a constitutional right. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). Under Monell, to impose municipal liability under § 1983 for a violation of a constitutional right, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that such policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that such policy was the moving force behind the constitutional violation. See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

As discussed above, because plaintiff has not filed an opposition, the Court is limited to the factual allegations in his complaint. The complaint does not allege the existence of any policy on the part of the HPD, much less that any policy was the moving force behind the officers' use of excessive force. The complaint merely alleges the facts surrounding plaintiff's arrest, including the officers' alleged use of excessive force on that occasion. Even viewed in the light most favorable to plaintiff, an allegation of the use of force on a single occasion does not give rise to a reasonable inference that the force was employed pursuant to policy. As plaintiff has not raised a genuine issue of material fact as to whether the constitutional violations alleged herein were committed pursuant to a policy of the HPD, the HPD is entitled to summary judgment on plaintiff's claims.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1. The motion for summary judgment is GRANTED as to defendant City of Hayward Police Department. The motion for summary judgment is DENIED as to the remaining defendants, specifically, Officer B. Matthews, Officer J. Cristofani, Officer D. Olsen, Officer D. Dorn, and Officer E. Hutchinson of the City of Hayward Police Department.

2. As plaintiff did not file an opposition to the motion for summary judgment or to defendant's prior motion to dismiss, and has not filed a document in this matter in over eight months, it is unclear whether he wishes to proceed with the action. Accordingly, within **thirty days** of the date this order is filed, plaintiff shall notify the Court as to whether he intends to prosecute this matter. **<u>Plaintiff is hereby advised that his failure to do so will result in the dismissal of the above-titled action for failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.</u>**

This order terminates Docket No. 23.

IT IS SO ORDERED.

DATED: March 2, 2007

_____
MAXINE M. CHESNEY
United States District Judge